**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000190
29-FEB-2012
08:43 AM**

NO. CAAP-10-0000190

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
LEONARD J. PEREIRA Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
WAHIAWA DIVISION
(CASE NO. 1DTC-09-027518)


SUMMARY DISPOSITION ORDER
(By:  Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Leonard J. Pereira (**Pereira**)
appeals the Notice of Entry of Judgment and/or Order and
Plea/Judgment filed on November 4, 2010 in the District Court of
the First Circuit, Wahiawa Division (**District Court**).[1]

Pereira was convicted of Excessive Speeding, in
violation of HRS § 291C-105(a) & (c) (2007 & Supp. 2009), arising
from a citation issued by Officer Susan Klimek (**Officer Klimek**)
to Pereira on April 22, 2009, for driving 81 miles per hour in a
45-mile-per-hour zone.

On appeal, Pereira contends that the District Court:
(1) erred in determining that proper foundation had been laid
with respect to Officer Klimek's testimony that, based on her
training and experience, the subject LTI 2020 laser gun was
operating properly; (2) erred in denying Pereira's motion for

---

[1]     The Honorable Christopher P. McKenzie presided.

judgment of acquittal based on a lack of foundation for admission of the laser gun reading; (3) erred in denying Pereira's renewed motion for judgment of acquittal after it concluded that the officer's testimony was sufficient to lay foundation for admission of the laser gun reading; (4) abused its discretion when it concluded that the laser gun tests were conducted in accordance with the manufacturer's manual; and (5) erred when it allowed the State to rely on foundational testimony that referred to April 22, 2009 (the date of the offense), rather than April 20, 2009, which was the date erroneously referred to by the court.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Pereira's points of error as follows:

Sufficient foundation for admission of the laser gun reading requires evidence that the laser gun was tested in accordance with the manufacturer's recommended procedure, and that "the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer." State v. Assaye, 121 Hawai'i 204, 210, 215, 216 P.3d 1227, 1233, 1238 (2009). The person proffering such foundational testimony should have personal knowledge of the manufacturer's recommendations for testing of the laser gun and of the laser gun testing according to said recommendations to overcome hearsay concerns. Id. at 213, 216 P.3d at 1236 (analyzing the police officer's testimony consistent with expert testimony in State v. Manewa, 115 Hawai'i 343, 354, 167 P.3d 336,

---

[2] These contentions were raised in Pereira's First Amended Opening Brief after Pereira's Opening Brief was stricken for failing to comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b). We note that the First Amended Opening Brief, although an improvement from the Opening Brief, still fails to comply with HRAP Rule 28(b)(3), which requires, inter alia, appropriate record references. Counsel is cautioned that failure to comply with HRAP may lead to sanctions.

347 (2007)). Additionally, the Assaye court, in its analysis of sufficient foundation for the laser gun reading, did not espouse any difference in testimony by the "expert" chemist in Manewa as opposed to testimony by the police officer in Assaye. Assaye, 121 Hawai'i at 210-14, 216 P.3d at 1233-37. Thus, status as an expert does not appear to be crucial to the analysis. Furthermore, In re Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection System, 714 A.2d 381 (NJ Super. 1998) (**In re Admissibility**) (which was cited with approval in Assaye, 121 Hawai'i at 213-14, 216 P.3d at 1236-37, in support of the premise that accepted procedures recommended by the manufacturer should be provided), additionally concluded: "speed readings produced by the laser speed detector should be received as evidence of the speed of motor vehicles without the need for expert testimony in individual prosecutions arising under the motor vehicle laws." In re Admissibility, 714 A.2d at 391 (emphasis added).

With the foregoing principles in mind, evidence in the instant case reflected the following. As to training on the laser gun and personal knowledge of the manufacturer's recommended procedures in that regard, Officer Klimek, a police officer for fourteen years with Honolulu Police Department (HPD), testified that she had been "already trained on the -- the 2020", in a course which was "four hours", and was subsequently trained on the UltraLyte in either 2008 or the fall of 2007, in a training session of "about a hour and a half total" that included "measur[ing] out the points and . . . how to operate the gun and check the batteries and details for the laser 2020." As part of the course of instruction, Officer Klimek received a copy of the manual from Laser Technology, Inc. Officer Klimek "went through [the manual] as [the instructor] instructed the class" and confirmed that the instruction she received matched the information she read in the manual. Officer Klimek confirmed

3

that she received instruction on the care and testing of the laser as contained in the manual.

Evidence from Officer Klimek's testimony described four tests for the laser gun--the self test, display test, scope alignment test, and the delta distance test and confirmed that she performed these four tests on the laser gun on April 22, 2009, and that the results of the tests indicated that the laser was operating correctly. Officer Klimek stated that if the test results were different, she "wouldn't have utilized that gun and signed out another one."

The evidence received through Officer Klimek's lay testimony was sufficient to establish that "the nature and extent of [Officer Klimek's] training in the operation of a laser gun meets the requirements indicated by the manufacturer." Assaye, 121 Hawai'i 204, 215, 216 P.3d 1227, 1238. Officer Klimek's testimony is consistent with the personal knowledge of the Manewa chemist who testified that he tested the device and determined that "the parameters are within manufacturer's specifications[,]" and that "[he] would not have used any of the instruments if they were not in proper working condition in that particular days," Manewa, 115 Hawai'i at 354, 167 P.3d at 347, upon which the Assaye court relied in stating that the "expert's 'personal knowledge' that was adduced through his testimony at trial was sufficient 'to establish that the GCMSs were in proper working condition.'" 121 Hawai'i at 213, 216 P.3d at 1236 (quoting Manewa, 115 Hawai'i at 354, 167 P.3d at 347).

Consequently, Pereira's first point that the District Court erred in determining proper foundation for accuracy of the laser device by utilizing lay testimony rather than expert testimony, second point that the District Court erred in denying Pereira's motion for judgment of acquittal because hearsay resulted in a lack of foundation for admission of the laser gun reading, and third point that the District Court erred in denying

Pereira's renewed motion for judgment of acquittal where it concluded as a matter of law that the officer's testimony was sufficient to lay foundation for admission of the laser gun reading cannot be sustained.

Pereira's fourth point of error contends that the District Court abused its discretion by concluding, in denying the renewed motion for judgment of acquittal, that the laser gun tests were conducted in accordance with the manufacturer's recommendations because the officer was unsure about those recommendations regarding delta distance. Pereira additionally argues that Officer Klimek's reliance on delta distance measurements measured by the traffic section of HPD reflects that she had no firsthand knowledge of the distances.

Officer Klimek explained the procedure that she and other officers use with regard to the delta distance test. She testified that there are two premeasured points located in the HPD parking lot in Wahiawa, and when the test mode button is activated and says "D1," she shoots at a blue diamond on the far wall, which is the farthest distance, and get a distance reading, and then she shoots at a pole that has a sign that says 'Our area is being monitored by camera', and get a distance reading, then push the test mode button again and "you get the reading between those two points, and you divide that by 2, and if you're plus or minus 1 foot based on the numbers, then everything's operating correctly." Officer Klimek acknowledged that "plus or minus 1 foot" is "the measured distance between the blue diamond and the pole with the sign" from the point where she was standing.[3] On cross-examination, Officer Klimek explained that delta distance points were D1, a "blue triangle," which was 112 feet, and D2,

_____

[3]     Although this testimony was not the height of clarity as to the precise reading reflected on the laser gun or the specific numbers to which the product of "dividing by 2" would be compared, Officer Klimek confirmed that when she performed the test on April 22, 2009, the results indicated that the instrument was "operating correctly" and were consistent with the description in the manual and the instruction that she had received.

the light pole, which was 64 feet from where she was standing, which was "at the captain's stall." Officer Klimek also read aloud from a document described as page 48 from the LTI 2020 Ultralyte manual:

> A. The tester must establish permanent known distances between a target and a shooting mark, fixed distance test, or between two targets and a shooting mark, delta distance test. The target and the shooting mark must form a straight line. Keep in mind that the minimum measurement is -- for this test is 50 feet.[4]

As to the requirements of the manual that the minimum measurement is 50 feet, the "measurement" to which the minimum of 50 feet appears to be the "permanent known distances" (1) between the referenced target and the shooting mark in a fixed distance test or (2) between two targets and a shooting mark in the delta distance test. Hence, the relevant measurement is from a target to the shooting mark, which measurement must be a minimum of 50 feet. According to Officer Klimek's testimony, the delta distance test was utilized and not the fixed distance test. The measurement between the target of the blue diamond/triangle on the wall and the shooting mark at the captain's stall of 112 feet exceeded the minimum of 50 feet, and the distance between the target of the light pole and the shooting mark at the captain's stall of 64 feet likewise exceeded the minimum of 50 feet. From the foregoing, the District Court, in viewing the testimony in the light most favorable to the prosecution in a motion for judgment of acquittal, did not abuse its discretion in denying the motion and concluding that the laser gun tests were conducted in accordance with the manufacturer's manual where the officer's testimony as to the manufacturer's recommendations regarding

---

[4] Although at trial the State's objection to questioning regarding the document was ultimately sustained, as Pereira argues, the testimony was not stricken, and, moreover, the State attaches to its brief and requests judicial notice of a portion of the manual that apparently includes virtually the same passage.

delta distance was consistent with the measurements in the delta distance test that she conducted.

With regard to measuring of the delta distance points, Officer Klimek explained that, as to the distances in that area where she tested, "[w]e actually measured it with a metal -- metal tape measure", further confirming on cross-examination that she measured out the delta distances with a tape measure which is "a metal tape measure that traffic said we had to use" that is "in the arsenal" and "belongs to the department," but she could not confirm that the tape measure was certified or that it was correct. Although Officer Klimek subsequently was asked "do you dispute 50 feet is -- is -- is a recommended distance, she responded, "I can only say that I know that traffic measured it out and we were told that the points that we use are good," this response by Officer Klimek in the context of the latter question does not necessarily contradict her earlier testimony that she personally measured the distances. Accordingly, Pereira's fourth point of error is unavailing.

Finally, in his fifth point of error, Pereira asserts that the District Court erred and abused its discretion in permitting foundation for an April 20, 2009 testing of the laser gun for an April 22, 2009 offense. As conceded by Pereira, "[t]he State laid foundation for Officer Klimek's LTI 2020 on the night of April 22, 2009." Pereira contends, however, that the District Court "found that the LTI 2020 used by Officer Klimek on April 20, 2009 was tested and working properly and that Officer Klimek properly used the LTI 2020 on April 20, 2009." The evidence reflects that the date of the incident was April 22, 2009. Although the District Court in its ruling recited the date of the incident as April 20, 2009, rather than the date reflected in testimony of April 22, 2009, such misstatement was harmless error where it did not affect "a substantial right" of Pereira in light of "the entire proceedings," and there was no "reasonable

possibility that the error contributed to the conviction." Hawaiʻi Rules of Penal Procedure Rule 52(a); <u>State v. Sprattling</u>, 99 Hawaiʻi 312, 320, 55 P.3d 276, 284 (2002); <u>State v. Pauline</u>, 100 Hawaiʻi 356, 378, 60 P.3d 306, 328 (2002); see <u>State v. Adams</u>, 697 P.2d 1229, 1231-32 (Idaho App. 1985) (magistrate's misspeaking of the offense that was grounds for probation revocation did not create reversible error where record demonstrated that the erroneous offense was not before the court and in consideration of the written order reflecting the correct offense).

For these reasons, we affirm the District Court's November 4, 2010 Notice of Entry of Judgment and/or Order and Plea/Judgment.

DATED:  Honolulu, Hawaiʻi, February 29, 2012.

On the briefs:

Anthony Fujii
for Defendant-Appellant

Anne K. Clarkin
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge